1  JEFFREY C. HALLAM (State Bar No. 161259)
   E-Mail:     *jhallam@sideman.com*
2  LOUIS P. FEUCHTBAUM (State Bar No. 219826)
   E-Mail:     *lfeuchtbaum@sideman.com*
3  SIDEMAN & BANCROFT LLP
   One Embarcadero Center, Eighth Floor
4  San Francisco, California 94111-3629
   Telephone:  (415) 392-1960
5  Facsimile:  (415) 392-0827

6

7  Attorneys for Plaintiffs
   CISCO SYSTEMS, INC. and
8  CISCO TECHNOLOGY, INC.

FILED

2011 MAR 25 ᴘ 2 43

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

9

10

11

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14  CISCO SYSTEMS, INC., a California          CASE NO. 1  1455
    corporation, and CISCO TECHNOLOGY,
15  INC., a California corporation,            **COMPLAINT FOR DAMAGES AND
                                              INJUNCTIVE RELIEF FOR:**
16                Plaintiffs,
                                              **1. FEDERAL TRADEMARK
17          v.                                   INFRINGEMENT 15 U.S.C. § 1114;
                                              2. USE OF A COUNTERFEIT MARK 15
18  DEXON COMPUTER, INC., A Minnesota            U.S.C. § 1117(c);
    Corporation,                              3. UNFAIR COMPETITION 15 U.S.C. §
19                                               1125(a)(1)(A);
                  Defendants.                 4. CALIFORNIA COMMON LAW
20                                               UNFAIR COMPETITION AND
                                                 TRADEMARK INFRINGEMENT;
21                                            5. UNFAIR BUSINESS PRACTICES,
                                                 CAL. BUS. & PROF. CODE § 17200 et
22                                               seq.;
                                              6. FRAUD, CAL. CIV. CODE § 1710
23

24                                            **JURY TRIAL DEMANDED**

25

26

27

28
                                                                        Case No.
                    COMPLAINT FOR TRADEMARK INFRINGEMENT, et al.

1  COMES NOW, Plaintiffs, CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.,
2  and complain and allege as follows:

## JURISDICTION

4  1.  This is a complaint for Trademark Counterfeiting, Trademark Infringement, Unfair
5  Competition, and False Description arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C.
6  §§ 1114(1) (Trademark Counterfeiting and Trademark Infringement) and 1125(a) (Unfair Competition
7  and False Description), Injury to Business Reputation And Dilution (Cal. Bus. & Prof. C.§ 14330),
8  California Common Law Unfair Competition and Trademark Infringement, Unfair Business Practices
9  (Cal. Bus. & Prof. C. § 17200, et. seq.), and Fraud (Cal. Civ. C. § 1710).

10  2.  This Court has original subject matter jurisdiction over this action pursuant to 28
11  U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121. This Court has supplemental jurisdiction under
12  28 U.S.C. §§ 1338(b) and 1367 for all claims in this Complaint that are based upon state law because
13  those claims are part of the same controversy as are claims being made under federal statute.

14  3.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 in that there is
15  complete diversity of citizenship between plaintiffs and defendant; and, the amount in controversy,
16  without interest and costs, exceeds $75,000. Plaintiff Cisco Systems, Inc. ("CISCO") is, and at all
17  times mentioned herein was, a California corporation, with its principal place of business at 170 W.
18  Tasman Dr., San Jose, California 95134. Plaintiff Cisco Technology, Inc. ("CTI") is, and at all times
19  mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman
20  Dr., San Jose, California 95134. CTI owns the trademarks that are used by CISCO in marketing
21  Cisco-branded products. Defendant DEXON COMPUTER, INC. ("DEXON"), is and was at all
22  relevant times mentioned herein a business entity incorporated in the State of Minnesota with its
23  principal place of business in Minneapolis, Minnesota.

24  4.  This Court has personal jurisdiction over the defendant DEXON, because DEXON has
25  and appears to continue to transact business within the State of California; because DEXON has
26  misrepresented the authentic nature of the counterfeit "Cisco" products to California residents;
27  because DEXON has caused tortious injury to Plaintiffs' trademarks within the State of California;
28  and because DEXON has systematically directed electronic activity into the State of California with

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  the manifest intent of engaging in business within the State of California, including the sale and/or

2  offer for sale to internet users within the State of California. DEXON maintains a website through

3  which it solicits business throughout the United States, including within the State of California.

4  CISCO alleges on information and belief that at all times relevant to this Complaint, DEXON has

5  continuously operated that website and that DEXON has purposefully maintained contacts within the

6  State of California for the purpose of conducting business there.

7      5.      DEXON has committed acts, related to the causes of action asserted in this Complaint,

8  which demonstrate that it has purposefully directed its activities towards the State of California. As

9  described more fully in this Complaint, these activities include selling counterfeit products directly

10 into the State of California. DEXON has also sold a product that it had shipped from a location within

11 the State of California. Plaintiffs further allege on information and belief that DEXON regularly

12 conducts business within the State of California.

### VENUE

14     6.      Venue for this action properly lies in the Northern District of California pursuant to

15 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of this action is

16 located within that district.

### INTRA-DISTRICT ASSIGNMENT

18     7.      In accordance with LR 3-2(c), this action is properly assigned on a District-wide basis

19 because it relates to Intellectual Property.

### FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS

21     8.      Founded in 1984, CISCO is a global leader in technology, with a large and diverse

22 customer base spanning governments and large enterprises, small to medium sized businesses and

23 individual consumers. Among other areas, CISCO's business includes high quality networking and

24 communications technology, including telecommunications networking hardware, advanced

25 telecommunications network design, implementation services, high-end videoconferencing technology

26 and data center technology, among others.

27     9.      CISCO has developed a strong name and reputation within the trade and among

28 members of the consuming public as a leading manufacturer of mission-critical networking and

1   telecommunications systems, and it sells these products worldwide.  CISCO and CTI have invested
2   substantial effort and resources to develop and promote public recognition of the CISCO trade name
3   and of the family of Cisco-related marks.  CISCO and CTI have used the family of Cisco trademarks
4   to identify goods and services as being genuine CISCO products, and the Cisco marks and name are
5   well-recognized signifiers of CISCO's high quality products and services (the Cisco marks and name
6   are hereinafter referred to as the "Cisco Marks").

7       10.     CTI has caused several Cisco Marks to be registered on the Principal Register of the
8   U.S. Patent and Trademark Office in connection with a range of telecommunications, computer
9   hardware and software products and services, and CTI owns all rights, title, and interest in numerous
10  federal trademark registrations.  The registered Cisco Marks include, but are not limited to, the
11  following:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO SYSTEMS and Design | 1,999,660 | September 10, 1996 |
| CISCO SYSTEMS and Design | 2,232,700 | March 16, 1999 |
| CISCO SYSTEMS and Design | 2,488,368 | September 11, 2001 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO SYSTEMS and Design | 2,552,361 | March 16, 2002 |
| CISCO SYSTEMS and Design | 2,959,329 | June 7, 2005 |

22      11.     The Cisco Marks are distinctive, having no meaning outside their use by CISCO in its
23  course of business operations and in its advertising to distinguish its products and services.  CISCO
24  uses these marks to advertise through a wide variety of media including television, radio, newspapers,
25  magazines, billboards, direct mail, web sites, and in telephone directories across the country.  As a
26  result, the Cisco Marks have become well known.

27      12.     Also as a result of CISCO's extensive advertising and promotional efforts and its
28  continuous use of its core Cisco Marks for more than 25 years, CISCO has attained one of the highest

1 levels of brand recognition. As a result of CISCO's longstanding and widespread use and promotion
2 of the Cisco Marks, CISCO's customers worldwide have come to rely upon the Cisco Marks to
3 identify CISCO's high-quality goods and services. Many of CISCO's products are purchased by the
4 U.S. Government, the military, and by other industries, in critical and life-essential applications.

5      13.     Counterfeit CISCO products jeopardize the systems into which they are placed because
6 they do not conform with CISCO's design, specifications, production standards or quality control, and
7 thus lack reliability. Counterfeit products that bear markings similar to the Cisco Marks provide
8 customers with a false assurance that the products they have purchased are reliable and conform with
9 CISCO's high standards. When counterfeit products fail, the purchasers can suffer critical losses to
10 their business, infrastructure, and security.

11      14.     In addition to harm to customers, the sale of counterfeit CISCO products also harms
12 CISCO in many ways. Among these, counterfeit CISCO products that fail create the false impression
13 that CISCO products are unreliable, thereby improperly tarnishing CISCO's reputation and causing
14 CISCO to suffer lost sales and business opportunities. When customers purchase Cisco-branded parts
15 that are unreliable counterfeits, their image of CISCO is diminished and CISCO's opportunity to sell
16 genuine, high-quality products to those customers may be forever lost. As a result, CISCO suffers
17 substantial and irreparable harm to its brand, image, business, and the public's goodwill. CISCO also
18 suffers lost sales as the result of customers purchasing counterfeit products, instead of genuine CISCO
19 parts.

20      15.     CISCO products that have been resold outside of CISCO's approved distribution
21 channels are not normally covered by CISCO warranties or by CISCO service contracts, because
22 CISCO cannot attest to their genuineness or condition. This restriction also applies to counterfeit
23 products that bear Cisco Marks.

24           **FACTUAL ALLEGATIONS RELATING TO DEFENDANT'S CONDUCT**

25      16.     From at least July 2006 through at least July 2010, the Defendant sold and trafficked in
26 counterfeit CISCO products, which it represented as being genuine, in spite of numerous demands by
27 CISCO that Defendant cease this illegal activity. Defendant also rejected CISCO's repeated requests
28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  for assistance in identifying the source of the counterfeit CISCO products that Defendant sold. Some

2  of the instances of counterfeit trafficking by DEXON are summarized below.

3  **Sale of Counterfeit CISCO Products on July 27, 2006**

4  17.    On July 27, 2006, DEXON sold three counterfeit CISCO products (Product

5  identification codes ("PID"): GLC-LH-SM, WIC-1DSU-T1-V2, and NM-4T) to an investigator, who

6  was working for CISCO. DEXON represented that these were all genuine CISCO products and that

7  they were new. DEXON sent two of these products (PIDs: GLC-LH-SM and WIC-1DSU-T1-V2)

8  directly from its business location in Minnesota. One of these parts (PID: NM-4T) was sent by

9  DEXON from 15330 Barranca Parkway, Irvine, California. These parts were inspected by an

10  engineer who determined that they were all non-genuine CISCO products.

11  18.    These counterfeit parts or their packaging contained markings that appeared

12  indistinguishable from Cisco trademarks that are registered with the U.S. Patent and Trademark Office

13  ("USPTO").

14  **FBI's Seizure of Counterfeit CISCO Products from DEXON on February 26, 2008**

15  19.    On February 26, 2008, the Federal Bureau of Investigation ("FBI") executed a search

16  warrant at DEXON's business location in Minneapolis, Minnesota. In the course of that search, the

17  FBI seized 204 Cisco-branded products that appeared suspicious. Engineers inspected a portion of

18  these and determined they were non-genuine CISCO products.

19  20.    Plaintiffs allege on information and belief that these counterfeit parts contained

20  markings that appeared indistinguishable from Cisco trademarks, which are registered with the

21  USPTO.

22  **March 7, 2008 Cease and Desist Letter to O'NEILL and DEXON**

23  21.    On March 7, 2008, CISCO sent a letter to Steven O'Neill ("O'NEILL"), the then and

24  current President and CEO of DEXON, demanding that DEXON cease and desist selling counterfeit

25  Cisco products. (A true and accurate copy of that letter is included with this Complaint as

26  "Attachment 1.") In that letter, CISCO demanded that DEXON preserve all evidence regarding the

27  sale of counterfeit CISCO products, and it requested DEXON's assistance in CISCO's investigation of

28  the sales of counterfeit "Cisco" products.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

22.    On March 18, 2008, DEXON responded to that letter through counsel, denying that DEXON had been involved in any illegal conduct. (A true and accurate copy of that letter is included with this Complaint as "Attachment 2.")

**Sale of Counterfeit CISCO Products to the City of Portland, Oregon In June 2008**

23.    At some time during, or about, June 2008, DEXON sold 28 CISCO branded products to the City of Portland, Oregon.

24.    Plaintiffs allege on information and belief that DEXON represented that these were all genuine CISCO products and that they were all new.

25.    Engineers examined these 28 products and determined that 24 of them were non-genuine CISCO products. These counterfeit parts contained markings that appeared indistinguishable from Cisco trademarks, which are registered with the USPTO.

**Sale of Counterfeit CISCO Products to Wayne State University In June 2010**

26.    On January 21, 2010, DEXON provided Wayne State University ("WSU") with a bid to supply it with various new CISCO products. On February 9, 2010, WSU issued a $180,000 purchase order to DEXON for these products. DEXON shipped these products to WSU during, or about, June 2010.

27.    On July 6, 2010, engineers inspected products that DEXON had supplied to WSU, and determined that 13 of them were non-genuine CISCO products. These counterfeit parts contained markings that appeared indistinguishable from Cisco trademarks, which are registered with the USPTO.

**Sale of Counterfeit CISCO Products During July 2010**

28.    On July 14, 2010, DEXON sold seven CISCO-branded products to an investigator in Los Angeles, CA, who was working for CISCO. DEXON represented that these were genuine CISCO products and that they were all new.   On July 21, 2010, DEXON shipped these products to the investigator at an address in Los Angeles, CA.

29.    On August 9, 2010, engineers completed their examination of these parts and determined that they were all non-genuine CISCO products. These counterfeit parts contained

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1 | markings that appeared indistinguishable from Cisco trademarks, which are registered with the
2 | USPTO.

3 | **August 6, 2010 Cease and Desist Letter to O'NEILL and DEXON**

4 | 30.     On August 6, 2010, CISCO sent a letter to O'NEILL, informing him of DEXON's sale

5 | of counterfeit parts to WSU and demanding that DEXON cease and desist this illegal conduct.  In that

6 | letter, CISCO demanded that DEXON preserve all evidence regarding its procurement and sale of the

7 | counterfeit CISCO products, requested that DEXON quarantine for inspection any CISCO-branded

8 | products that it procured in the same batch as the counterfeit products, and requested DEXON's

9 | assistance in tracing the counterfeit products to the source.  (A true and accurate copy of that letter is

10 | included with this Complaint as "Attachment 3.")

11 | 31.     On August 23, 2010, DEXON responded through counsel to CISCO's Cease and

12 | Desist Letter.  Among other things in that response, DEXON denied that it knowingly engaged in the

13 | sale of counterfeit products or had any liability "for trademark counterfeiting without regard to notice,

14 | knowledge, or intent[]."  DEXON also demanded that CISCO "substantiate [its claims] with more

15 | specific information about the nature of the liability. . . ."  and requested that CISCO provide it with

16 | "all information available to substantiate [its]claim that the products listed in [its] letter are in fact

17 | counterfeit."  DEXON conditioned a willingness "to discuss how it might cooperate in Cisco's

18 | investigation," upon the "extent that Cisco is willing to provide the [information that Dexon

19 | requested]."  (A true and accurate copy of that letter is included with this Complaint as

20 | "Attachment 4.")

21 | 32.     On August 30, 2010, CISCO responded to DEXON by providing it with much of the

22 | requested information.  CISCO provided DEXON with general guidelines on how to avoid purchasing

23 | counterfeit products, but noted that many indicia of genuine products are maintained as trade secrets

24 | because of the need to avoid educating counterfeiters.  CISCO provided DEXON with legal authority

25 | to address its contention that it could not be liable for trademark counterfeiting.  CISCO noted

26 | DEXON's previous refusals to identify its source for counterfeit products, and renewed its request for

27 | DEXON's assistance.  (A true and accurate copy of that letter is included with this Complaint as

28 | "Attachment 5.")

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

33.   DEXON did not respond to CISCO's August 30, 2010 letter.

**FIRST CAUSE OF ACTION**
**(Federal Trademark Infringement**
*15 U.S.C. § 1114*)

34.   Plaintiffs incorporates paragraphs 1-33 of this Complaint as if fully set forth herein.

35.   Defendant has used in commerce marks that are confusingly similar to the Cisco Marks, in connection with the sale of computer networking and telecommunications equipment, in a manner that is likely to cause confusion, mistake, or to deceive. Defendant acted without authority in using these Cisco Marks.

36.   Plaintiffs allege on information and belief that Defendant's infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Plaintiffs' exclusive rights to and goodwill in the Cisco Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.

37.   As a result of the Defendant's trademark infringement, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damages to its right in and to the Cisco Marks, and the goodwill associated therewith, for which they have no adequate remedy at law.

38.   Due to the acts of the Defendant, Plaintiffs have suffered and will continue to suffer loss of income, profits, and valuable business opportunities, and, if not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its acts of infringement.

39.   As the acts alleged herein constitute infringement of the Cisco Marks under 15 U.S.C. § 1114, and as Plaintiffs have no adequate remedy at law, Plaintiffs are entitled to injunctive relief as well as to monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages, reasonable attorney's fees and prejudgment interest, and/or statutory damages  provided by 15 U.S.C. § 1125.

**SECOND CAUSE OF ACTION**
**(Counterfeit of Registered Trademark)**
*15 U.S.C. § 1114(1)*

40.   Plaintiffs incorporate paragraphs 1-39  of this Complaint as if fully set forth herein.

41.    DEXON offered for sale, sold, or distributed goods or services that bore marks that are nongenuine, which are identical with or substantially indistinguishable from Plaintiff's registered Cisco Marks;

42.    The Cisco Marks are registered on the Principal Register of the USPTO for the same goods or services in connection with those goods or services offered by DEXON under nongenuine Cisco Marks.

43.    DEXON is not and has never been authorized by Plaintiffs to use the Cisco Marks on or in connection with the goods or services DEXON is alleged to have sold herein.

44.    DEXON has therefore used a counterfeit mark, as defined under 15 U.S.C. § 1116(d) and/or 15 U.S.C. § 1127 in connection with the sale, offering for sale, or distribution of goods or services in violation of 15 U.S.C. § 1114(1).

45.    These infringing acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

46.    Plaintiffs are entitled to statutory damages, as provided by 15 U.S.C. § 1117(c).

## THIRD CAUSE OF ACTION
### (Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A))

47.    Plaintiffs incorporate paragraphs 1-46 of this Complaint as if fully set forth herein.

48.    Defendant did without authorization make false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were and are likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendant with Plaintiffs, and/or as to the origin, sponsorship, or approval of the Defendant's goods or services, or commercial activities.

49.    Plaintiffs allege on information and belief that Defendant's acts have been committed with knowledge of Plaintiffs' exclusive common law rights and goodwill in the Cisco Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive.

50.    Plaintiffs have suffered, and, if the Defendant is not enjoined from its wrongful acts of passing off and acts of making false designations or origin, false or misleading descriptions of fact,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  and false or misleading representations of fact as described herein, will continue to suffer, great and
2  irreparable injury, loss, and damages to its rights in and to the Cisco Marks and the goodwill
3  associated therewith for which it has no adequate remedy at law.

4      51.     As a result of the Defendant's wrongful acts, Plaintiffs have suffered and will continue
5  to suffer loss of income, profits, and valuable business opportunities, and, if not restrained, Defendant
6  will have unfairly derived and will continue to unfairly derive income, profits and business
7  opportunities as a result of its wrongful acts.

8      52.     As the acts alleged herein violation Section 43(a) of the Lanham Act, 15 U.S.C. §
9  1125(a), and as Plaintiffs have no adequate remedy at law, Plaintiffs are entitled to injunctive relief as
10 well as monetary damages, other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including
11 treble damages, a reasonable attorney's fee and prejudgment interest, and/or statutory damages
12 provided by 15 U.S.C. § 1125.

**FOURTH CAUSE OF ACTION**
**(California Common Law Unfair Competition and Trademark Infringement)**

15     53.     Plaintiffs incorporate paragraphs 1-52 of this Complaint as if fully set forth herein.

16     54.     Defendant's use of the Cisco Marks in connection with the marketing and sale of
17 counterfeit and unauthorized CISCO products is likely to cause confusion, mistake, and deception as
18 to whether these products are approved of, sponsored by, or somehow affiliated with Plaintiffs.

19     55.     Defendant's actions constitute common law unfair competition and trademark
20 infringement and have caused Plaintiffs damages in an amount to be determined at trial.

21     56.     Plaintiffs allege on information and belief that Defendant has derived and continues to
22 derive substantial revenue and profits from its past and ongoing unfair competition and trademark
23 infringement, arising from their use of the Cisco Marks.

24     57.     Defendant's actions have caused and, unless restrained by this Court, will continue to
25 cause irreparable injury to Plaintiffs.

26     58.     Plaintiffs have no adequate remedy at law for Defendants' unfair competition and
27 trademark infringement.

28  / / /

1    59.    Defendant's willful acts of common law trademark infringement constitute fraud,

2    oppression, and malice.   Accordingly, Plaintiffs are entitled to exemplary damages pursuant to

3    California Civil Code § 3294(a).

### FIFTH CAUSE OF ACTION
### (Unfair Business Practices,
### Cal. Bus. & Prof. Code § 17200 et seq.)

7    60.    Plaintiffs incorporate paragraphs 1-59 of this Complaint as if fully set forth herein.

8    61.    California Business and Professions Code § 17200, *et seq:* prohibits acts of unfair

9    competition, which means any "unlawful, unfair, or fraudulent business act or practice."

10    62.    In pursuing the above-described marketing and sale of counterfeit and unauthorized

11    CISCO products, Defendant has engaged in unlawful business acts or practices by committing the

12    above described acts, including trademark infringement, false representation, dilution, injury to

13    business representation, and the other acts and practices alleged herein, in an effort to gain unfair

14    competitive advantage and a windfall in the marketplace.

15    63.    Plaintiffs allege upon information and belief that Defendant has continuously failed to

16    affix to their products a conspicuous ticket, label, or tag disclosing that its products are not covered by

17    CISCO's warranties as required by Cal. Civil Code § 1797.81.

18    64.    Plaintiffs allege upon information and belief that Defendant has continuously failed to

19    disclose in its advertisements that its products are not covered by CISCO's warranties as required by

20    Cal. Civil Code §1797.82.

21    *65.*    Defendant's practices were unlawful, unfair, and/or fraudulent, and constitute unlawful,

22    unfair, and/or fraudulent competition as defined by Cal. Bus. & Prof. C. § 17200, *et seq.*

23    *66.*    Pursuant to Cal. Civil Code § 1797.86, Defendant's failure to comply with Cal. Civil.

24    Code §§ 1797.81-1797.82 constitute unfair competition under California Bus. & Prof. C. § 17200, *et*

25    *seq.*

26    67.    Plaintiffs seek full restitution by Defendant according to proof to restore any and all

27    property and monies, including interest, acquired by Defendants, and all costs caused to Plaintiffs as a

28    result of Defendant's unfair business practices.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    68.    Defendant's actions have caused and, unless restrained by this Court, will continue to
2    cause irreparable injury to Plaintiffs.

3    69.    Plaintiffs have no other adequate remedy at law for Defendant's unfair competition and
4    business practices.

## SIXTH CAUSE OF ACTION
## (Fraud, Cal. Civ. Code § 1710)

7    70.    Plaintiffs incorporate paragraphs 1-69 of this Complaint as if fully set forth herein.

8    71.    In each sale described in this complaint, by selling products that contained marks that
9    are substantially similar to Cisco Marks, Defendant intentionally misrepresented that the products it
10   sold were genuine CISCO products. Defendant also intentionally misrepresented that the products it
11   sold were genuine CISCO products by explicitly making that representation for each sale that is
12   described in this Complaint. These representations were false.

13   72.    Plaintiffs allege on information and belief that Defendant knew that these
14   representations were false at the time that it made them, or Defendant made these representations
15   recklessly and without regard for their truth.

16   73.    In each sale, described in this Complaint, Defendant made these representations in
17   order to induce purchasers to act in reliance upon the representations and purchase products from
18   DEXON, with the mistaken belief that they were purchasing genuine CISCO products. Defendant
19   intended to deprive CISCO of market opportunities, and they intended to harm CISCO's reputation
20   and brand by engaging in this conduct.

21   74.    Plaintiffs have been harmed by DEXON's fraudulent misrepresentations in that CISCO
22   did lose market opportunities by Purchasers obtaining counterfeit products from DEXON, instead of
23   purchasing genuine CISCO products; and CISCO's brand and reputation have been harmed by
24   DEXON's sale of inferior products, which appear related to CISCO.

25   75.    Defendant's misrepresentations were a substantial factor in causing Plaintiffs' harms
26   because all of the sales were conditioned upon DEXON's sale of genuine CISCO products and these
27   sales would not reasonably have occurred absent Defendant's misrepresentations that the products
28   they sold were genuine CISCO products.

COMPLAINT FOR TRADEMARK INFRINGEMENT, et al.

**PRAYER FOR RELIEF**

That following trial of this action the Court enter judgment as follows:

1.  That the Defendant directly infringed and counterfeited the CISCO Marks, and engaged in unfair competition through use of their counterfeit and/or infringing marks;

2.  That Defendant's trademark infringement and counterfeiting were knowing and willful and committed with bad faith and intent to deceive;

3.  That this case is exceptional under 15 U.S.C. § 1117(a); and,

4.  That a preliminary and permanent injunction be issued enjoining defendant and its agents, servants, employees, and attorneys and those persons in active concert or participation with them:

a.  From using any of Plaintiff s Trademarks or any mark similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

b.  From using any logo, trade name or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of defendant or of third parties are· sponsored by, authorized by, or in any way associated with the plaintiff; From infringing Plaintiffs' registered trademarks;

d.  From otherwise unfairly competing with Plaintiffs;

e.  From falsely representing itself as being connected with Plaintiffs or sponsored by or associated with Plaintiffs or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that defendant is associated with Plaintiffs;

f.  From using any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Trademarks in connection with the publicity, promotion, sale or advertising of goods sold by defendant including, without limitation, computer hardware, software, switches, routers, electronics, telecommunications, or other communications equipment bearing a copy or colorable imitation of Plaintiffs' trademarks; and,

///

g. From affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent such goods as being those of Plaintiffs and from offering such goods in commerce;

5. That Plaintiffs be awarded actual or statutory damages;

6. That Plaintiffs be awarded prejudgment interest;

7. That Plaintiffs be awarded reasonable attorneys' fees;

8. That Plaintiffs be awarded treble damages;

9. That Plaintiffs be awarded the Defendants' profits and actual damages;

10. That Plaintiffs be awarded punitive and exemplary damages.

11. That Plaintiffs be awarded the costs of prosecuting this claim;

12. That defendant be required to account to Plaintiffs for all profits and damages resulting from defendant'srespective infringing activities and that the award to Plaintiffs be increased as provided for under 15 U.S.C. § 1117, and;

13. That Plaintiffs be granted such other and further relief as the Court deems just and proper.

Dated: March 25, 2011

SIDEMAN & BANCROFT LLP
JEFFREY C. HALLAM
LOUIS P. FEUCHTBAUM

By: [signature]
Louis P. Feuchtbaum
Attorneys for Plaintiff, CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.

2835-75\1156633v2

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

**DLA Piper US LLP**
153 Townsend Street, Suite 800
San Francisco, California 94107-1957
www.dlapiper.com

Eugene M. Pak
eugene.pak@dlapiper.com
T  415.615.6024
F  415.659.7324

March 7, 2008

OUR FILE NO. 26573-12/Dexon Computer, Inc.

*Via Federal Express*

Dexon Computer, Inc.
9201 E. Bloomington Freeway, Suite BB
Minneapolis, MN  55420

Attn:  Steven O'Neil, CEO/President

Re:   **Cease and Desist Sale of Counterfeit Cisco Products**

Dear Mr. O'Neil:

We represent Cisco Systems, Inc. ("Cisco").  The distribution of counterfeit Cisco branded goods is unlawful and has been receiving widespread attention in the press, as shown by the articles available at:

- Information Week
  http://www.informationweek.com/security/showArticle.jhtml?articleID=206901053

- CNNMoney.com (Dow Jones Newswire)
  http://money.cnn.com/news/newsfeeds/articles/djf500/200802281624DOWJONESDJONLINE
  001151_FORTUNE5.htm

- SiliconValley.com (Bloomberg News)
  http://www.siliconvalley.com/ci_8403762?nclick_check=1

Cisco has been conducting its own investigations into trafficking in counterfeit Cisco products for purposes of potential enforcement in the civil courts.

Cisco has determined that Dexon Computer, Inc. has been distributing counterfeit Cisco hardware. Specifically, Cisco has obtained Cisco products that were sold by Dexon Computer, Inc., had them analyzed and has determined that these products were not manufactured by Cisco nor under its authority.

Cisco requires your immediate cooperation in bringing this infringing activity to a halt.  Cisco specifically demands that you immediately cease and desist marketing and distributing counterfeit and infringing goods.

The civil legal sanctions for violations of federal and state trademark, unfair competition, and deceptive business practices laws are severe.  In appropriate cases, a court may order a seizure of counterfeit and infringing goods, issue an injunction enjoining further wrongful and infringing activity, enter judgment for damages, order the disgorgement of any profits derived from the infringer's wrongful conduct, and charge penalties such as trebling the damage award and/or punitive damages.  In some cases, a court can award statutory trademark damages of up to $1,000,000 per trademark infringed and award attorneys' fees.  In many cases, these remedies are available whether or not the infringing party was aware of the counterfeit and infringing nature of the goods sold.

**ATTACHMENT 1**



Steven O'Neil, CEO/President
Dexon Computer, Inc.
March 7, 2008
Page Two

This letter serves as legal notice that you must preserve all evidence regarding Dexon Computer, Inc.'s sales of purported Cisco products. In addition to your agreement to forever cease and desist in your infringing conduct, Cisco also requests that you voluntarily cooperate with Cisco's investigation by providing us with relevant information that would assist Cisco in tracing these counterfeit goods to their ultimate source and to others in your chain of distribution. Specifically, please provide the following information for the last two years:

- Identify any purported Cisco products that you have sold;

- Identify all customers to whom you have distributed any purported Cisco product; and

- Produce written or electronic documents reflecting all transactions in purported Cisco products, including correspondence, invoices, purchase orders or other similar commercial documents.

The information you provide should include any written or electronic documents reflecting the above transactions, including correspondence, invoices, purchase orders or other similar commercial documents.

If Dexon Computer, Inc. is interested making a binding commitment to cease selling counterfeit Cisco products and to fully cooperate with Cisco's investigation of counterfeit trafficking, please contact Joshua Koltun at 415-680-3410 or me at 415-615-6024. In the meantime, Cisco fully reserves its rights to pursue any and all civil remedies in this matter.
Sincerely,

DLA Piper US LLP

Eugene M. Pak

EMP:kk

cc:     Joshua Koltun, Esq.



Steven O'Neil, CEO/President
Dexon Computer, Inc.
March 7, 2008
Page Three

bcc:    Brett Millar (via e-mail)
        Neal Rubin, Esq. (via e-mail)
        Bill Friedman (via e-mail)
        Keith Medansky, Esq. (via e-mail)
        Richard Nelson, Esq. (via e-mail)
        Jeff Hallam, Esq. (via e-mail)



2200 IDS Center
80 South 8th Street
Minneapolis MN 55402-2157
tel 612.977.8400
fax 612.977.8650

March 18, 2008

**Matt Forsgren**
612.977.8698
mforsgren@briggs.com

## VIA E-MAIL AND U.S. MAIL

Eugene M. Pak
DLA Piper US LLP
153 Townsend Street, Suite 800
San Francisco, CA 94107-1957

### Re:   Cisco Systems, Inc./Dexon Computer, Inc.

Dear Mr. Pak:

We are counsel for Dexon Computer, Inc. We are in receipt of your letter to Dexon dated March 7, 2008. On behalf of Dexon, we respond as follows.

Your letter makes serious accusation against Dexon. Yet you provide no objective data to support any of your assertions. Rather, we note that you make reference to several media reports concerning the presence of counterfeit Cisco hardware in the marketplace. These reports provide virtually no specificity concerning the actual volume of counterfeit Cisco goods in the marketplace, and these reports also provide no guidance about how to detect a counterfeit product.

Inasmuch as your letter might imply that Dexon is involved in distributing counterfeit Cisco products that Dexon itself has manufactured, Dexon specifically denies the accusation. Dexon does not manufacture any hardware. To the contrary, Dexon distributes hardware that Dexon has purchased from third parties.

Dexon purchases in good faith the hardware that it distributes. To the extent that Dexon receives any equipment that is not genuine, Dexon is victimized in the same way that any purchaser of Cisco equipment is victimized. Indeed, Dexon takes steps to avoid purchasing from sellers that Dexon believes to be involved in the distribution of counterfeit hardware.

To be clear, Dexon has never knowingly sold counterfeit goods. If Dexon possessed hardware that Dexon believed was counterfeit, Dexon under no circumstances would distribute the product to its customers. The distribution of counterfeit hardware would damage Dexon's relationships with its clients.

You suggest that you have obtained Cisco products that were sold by Dexon that "you have determined were not manufactured by Cisco nor under its authority." Dexon requests that

**Briggs and Morgan, Professional Association**
Minneapolis I St. Paul I www.briggs.com
2153626v1                                    Member - Lex Mundi, a Global Association of Independent Law Firms

**ATTACHMENT 2**

BRIGGS AND MORGAN

Mr. Eugene Pak
March 18, 2008
Page 2

Cisco provide Dexon with information that supports the conclusions that Cisco has made concerning this hardware. In addition, Dexon requests that Cisco provide Dexon information concerning the type and amount of the products to which reference is made in your March 7 letter. Finally, Dexon specifically requests that Cisco provide information that Dexon can use to determine whether a Cisco-branded product is genuine or counterfeit. Other manufacturers provide this information, and the information is of assistance in detecting whether one has purchased counterfeit product.

To the extent that Cisco is willing to provide the above information to Dexon, Dexon would be willing to discuss how it might cooperate in Cisco's investigation. I look forward to hearing from you in this regard.

Sincerely,

Matthew D. Forsgren

MDF/cld
cc:    Steve O'Neil

# S)B

**SIDEMAN & BANCROFT LLP**

One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone: 415.392.1960
Facsimile: 415.392.0827

Writer's E-Mail: lfeuchtbaum@sideman.com
Writer's Direct Dial: (415) 733-3905

August 6, 2010

## VIA FEDERAL EXPRESS

Mr. Steven O'Neil, President
Dexon Computer, Inc.
9201 E. Bloomington Freeway, Suite BB
Bloomington, MN 55420

      Re:    Cease & Desist Sale of Counterfeit Cisco Products

Dear Mr. O'Neil:

      We represent Cisco Systems, Inc. ("Cisco") and are contacting you about thirteen counterfeit Cisco products that Dexon Computer, Inc. ("Dexon") sold to Wayne State University earlier this year. An inspection by Cisco revealed that the following products sold by Dexon are counterfeit:

| Product ID | Serial Number | Product ID | Serial Number |
|---|---|---|---|
| GLC-SX-MM= | FNS11301321 | GLC-SX-MM= | FNS11301320 |
| GLC-SX-MM= | FNS11301322 | GLC-SX-MM= | FNS1136112D |
| GLC-LH-SM= | FNS11303191 | GLC-SX-MM= | FNS1136113D |
| GLC-SX-MM= | FNS1136117D | GLC-SX-MM= | FNS1136114D |
| GLC-SX-MM= | FNS1136118D | GLC-SX-MM= | FNS1136115D |
| GLC-SX-MM= | FNS1136119D | GLC-SX-MM= | FNS1136116D |
| GLC-SX-MM= | FNS1136100D | | |

These products ("Infringing Products") were neither manufactured by Cisco, nor under its authority.

**ATTACHMENT 3**

Dexon Computer, Inc.
August 6, 2010
Page 2

Cisco requires your immediate cooperation in bringing this infringing activity to a halt. Cisco demands that you immediately cease and desist marketing, selling, or distributing counterfeit and infringing goods.

The civil legal sanctions for violations of federal and state trademark, unfair competition, and deceptive business practices laws can be severe. In appropriate cases, a court may order a seizure of counterfeit and infringing goods, issue an injunction enjoining further wrongful and infringing activity, enter judgment for damages, order the disgorgement of any profits derived from the infringer's wrongful conduct, and charge penalties such as trebling the damage award and/or punitive damages. In some cases, a court can award statutory trademark damages of up to $2,000,000 per trademark infringed and award attorneys' fees. In many cases, these remedies are available whether or not the infringing party was aware of the counterfeit and infringing nature of the goods sold. This letter serves as legal notice that you must preserve all evidence regarding Dexon's acquisition of the Infringing Products and its subsequent shipment to Wayne State.

In addition to your agreement to forever cease and desist in your infringing conduct, Cisco also requests that you cooperate with its investigation by providing us with relevant information that could assist Cisco in tracing these counterfeit goods to their origin and manufacture. Specifically, you are requested to provide:

- All written or electronic documents, and any other evidence concerning the purchase of these Infringing Products by Dexon;

- All written or electronic documents, and any other evidence concerning all Cisco branded products that Dexon purchased from the same source that provided it with these Infringing Products;

- Identification of any entity to which Dexon sold other Cisco branded products that were procured by Dexon in the same batch as the Infringing Products, along with a description of the Product ID and serial number of the products that were sold;

- All written or electronic documents, and any other evidence that could identify the products and serial numbers of any other Cisco branded products that Dexon procured in the same batch as the Infringing Products;

- All written or electronic documents, and any other evidence concerning the entities that owned, bought, sold, or shipped these Infringing Products prior to the time that they were received by Dexon;

- All written or electronic documents, and any other evidence concerning the origin of these Infringing Products;

Dexon Computer, Inc.
August 6, 2010
Page 3

- All written or electronic documents, and any other evidence concerning the sale or shipment of these Infringing Products to Wayne State.

- Any other information that Dexon may have regarding other counterfeit Cisco products.

The documentation that you provide to us should include, but not be limited to, any invoices, packing slips, Bills of Lading, Purchase Orders, purchase or sales contracts, Customs Declarations, photographs, and tax or tariff documents that are relevant to our request. The documentation should identify the serial numbers of the associated products. If the serial numbers are not included in the documentation, then you are requested to explain how the documents are associated with the products. Dexon is also requested to quarantine any Cisco branded products in its possession that were procured in the same batch as the Infringing Products so that Cisco may inspect them.

You should contact us within ten days if Dexon wishes to make a binding commitment to cease and desist selling counterfeit Cisco products. In the interim, Cisco reserves all rights regarding any further action it may take.

Very truly yours,

Louis P. Feuchtbaum

2835-75\1018878v2



2200 IDS Center
80 South 8th Street
Minneapolis MN 55402-2157
tel 612.977.8400
fax 612.977.8650

August 23, 2010

**Daniel A. Rosenberg**
(612) 977-8795
drosenberg@briggs.com

## VIA EMAIL(LFEUCHTBAUM@SIDEMAN.COM) & FIRST CLASS MAIL

Mr. Louis P. Feuchtbaum
Sideman & Bancroft
One Embarcadero Center
Eighth Floor
San Francisco, CA 9411

> **Re:** **Cisco Product Allegations**
> **Our Client Matter No. 29980.2**

Dear Mr. Feuchtbaum:

We have reviewed your letter of August 6, 2010. First, we assure you that Dexon Computer, Inc. ("Dexon") does not, and has not, knowingly engaged in the sale or distribution of counterfeit products. In fact, Dexon uses all due diligence and caution available to it to inspect and verify wherever possible the authenticity of the products it sells or resells.

In this regard, we would ask that you provide us with all information available to substantiate your claim that the products listed in your letter are in fact counterfeit. Dexon purchases in good faith the hardware that it distributes. To the extent that Dexon may receive any equipment that is not genuine, Dexon is victimized in the same way that any purchaser of Cisco equipment is victimized. Indeed, Dexon takes steps to avoid purchasing counterfeit hardware; however, that effort is compromised to the extent that Cisco withholds information on means to authenticate equipment.

Dexon specifically requests that Cisco provide information that Dexon can use to determine whether a Cisco-branded product is genuine or counterfeit. Other manufacturers provide this information, and the information is of assistance in detecting whether one has purchased counterfeit product. It is in no one's interests to withhold this information.

Your letter also asserts that there is liability for trademark counterfeiting without regard to notice, knowledge, or intent. We are not aware of any basis for allegations of strict liability for violations of this nature. We must insist that you substantiate this claim with more specific information about the nature of the liability to which you refer.

**Briggs and Morgan, Professional Association**
Minneapolis | St. Paul | www.briggs.com
Member - Lex Mundi, a Global Association of Independent Law Firms

2652747v1

**ATTACHMENT 4**

BRIGGS AND MORGAN

**VIA EMAIL(LFEUCHTBAUM@SIDEMAN.COM)      & FIRST CLASS MAIL**

Mr. Louis P. Feuchtbaum
August 23, 2010
Page 2

Again, Dexon takes these claims, and its responsibilities in this area very serious, and in view thereof Dexon is not aware of any counterfeit Cisco products that have passed through its hands. To the extent that Cisco is willing to provide the above information to Dexon, Dexon would be willing to discuss how it might cooperate in Cisco's investigation.

We look forward to hearing from you in this regard.

Sincerely,

Briggs and Morgan, P.A.

Daniel A. Rosenberg

Daniel A. Rosenberg
Intellectual Property & Patents

DAR



**SIDEMAN & BANCROFT LLP**

One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone: 415.392.1960
Facsimile: 415.392.0827

Writer's E-Mail: lfeuchtbaum@sideman.com
Writer's Direct Dial: (415) 733-3905

August 30, 2010

**VIA FEDERAL EXPRESS**

Daniel A. Rosenberg
Briggs and Morgan
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402

> Re:  Cease & Desist Sale of Counterfeit Cisco Products Demand to Dexon
> Computer, Inc.

Dear Mr. Rosenberg:

I have received your letter, dated August 23, 2010, regarding Cisco's Cease and Desist ("C&D") letter to your client, Dexon Computer, Inc. ("Dexon"). While I note your claim that Dexon takes allegations about its dealing in counterfeit products very seriously, Dexon has refused to identify its source for these counterfeit products, or to provide any other information that could potentially advance Cisco's investigation. I am writing to ask that Dexon reconsider its decision to abet counterfeiters by helping them to remain hidden.

As I am sure you understand, like many technology companies, Cisco keeps certain characteristics of its genuine parts as trade secrets because it needs to have proprietary methods for detecting counterfeits that are not generally known. Publicly disclosing those methods would help counterfeiters avoid detection. However, there are many common sense steps Dexon can take if it truly intends to stop trafficking in counterfeit products. In particular, it is often noted that "too good to be true" pricing is a red flag that the products may be counterfeit. In addition, if a seller has large quantities of "new" products, that may be a warning sign. Obviously, if a seller has previously sold counterfeit, or had their shipments seized by Customs for being counterfeit, that should be a warning to beware dealing with that entity.

These basic steps, described above, are not new or revolutionary. Indeed, in an October 23, 2006 article in Network World, the author outlined several steps on how to avoid purchasing counterfeit networking products:

**ATTACHMENT 5**

Dexon Computer, Inc.
August 30, 2010
Page 2

> Because clones and packaging are getting more realistic, many people don't realize they have counterfeit network equipment until it's installed and begins acting quirky. Outages and failures are often the tip-off that the gear is fake.
>
> > \* Don't shop on eBay for deeply discounted gear, particularly from sellers in China.
> >
> > \* Don't go outside your trusted channel to buy critical network components.
>
> \* \* \*          \* \* \*          \* \* \*
>
> > \* Check the packaging carefully, inspecting for anything out of the ordinary in the logo, size and type of packaging materials by comparing them with others in the same shipment.
> >
> > \* Closely examine the gear and compare holograms and chip sets.
>
> Stopping the trafficking of counterfeit technology products is a serious matter, due to the risks such products pose to the public's health and safety, and the potential danger to the nation's critical infrastructure.

In its C&D letter to Dexon, Cisco identified the counterfeit products that Dexon trafficked in by part number, serial number, and by the purchasing customer. With that information, Dexon could certainly assist Cisco's investigation, if it was truly "very serious" about not selling counterfeit parts. Your demand that Cisco provide Dexon with non-public information about its products as a precondition to Dexon discussing how "it might cooperate in Cisco's investigation" is not relevant to this request and detracts from the credibility of Dexon's professed desire to avoid dealing in counterfeits.

In your August 23rd letter, you requested a description of the legal theories by which your client could be liable ["We must insist that you substantiate this claim. . . ."] and asserted that there is no "strict liability for violations of this nature." This understanding of the law is mistaken. *See* 15 U.S.C. § 1114(1)(a)(absence of knowledge or intent elements, making this a strict liability tort); *S.C. Johnson & Son, Inc. v. Johnson,* 266 F.2d 129 (6th Cir. 1959)(intent is not an essential element for infringement action) *cert. denied* 361 U.S. 820; *Squirrel Brand Co. v. Barnard Nut Co.,* 224 F.2d 840 (5th Cir. 1955)(neither guilty knowledge nor fraudulent intent are essential elements for trademark infringement) *cert. denied* 350 U.S. 995; *Ford Motor Co. v. B & H Supply, Inc.*, 646 F.Supp. 975, 989 (D.Minn. 1986)("Intent is not an element of copyright infringement and, thus, absence of intent is not a valid defense to a claim of copyright infringement."); *Elder Mfg. Co. v. Martin Trenkle Co.*, 90 F.Supp. 889, 892 (D.Ark. 1950)("Under the modern law of trade-mark and unfair competition the lack of intentional infringement or competition is not controlling. Guilty intent is not necessary."); *Larsen v.*

Dexon Computer, Inc.
August 30, 2010
Page 3

*Ortega*, 816 F.Supp. 97 (D.Conn. 1992)(intent is not a required element for trademark infringement action), *aff'd* 990 F.2d 623; *Polo Fashions, Inc. v. Fernandez*, 655 F.Supp. 664 (D.P.R. 1987)(actions for trademark infringement and Lanham Act unfair competition do not depend upon proof of wrongful or fraudulent intent). *See also Louis Vuitton S.A. v. Lee*, 875 F.2d 584 (7th Cir. 1989)(willful blindness is sufficient to prove knowledge for mandatory award of treble damages).

Prior to this incident, Cisco previously warned Dexon that it must refrain from trafficking in counterfeit products. On March 7, 2008, Cisco sent a letter to Dexon, demanding that it cease and desist selling counterfeit Cisco products, and requesting Dexon's assistance in identifying its source for those counterfeit products. (Enclosure.) Dexon refused to assist Cisco's investigation of the counterfeit products referenced in that letter. It now appears that Dexon has also refused to comply with Cisco's demand that it cease and desist trafficking in counterfeit products. This repeated conduct suggests, at a minimum, a "willful blindness" to the continued trafficking in counterfeit product that could support a treble damages award against Dexon.

Cisco once again offers Dexon the opportunity to assist it in deterring counterfeit trafficking by providing information about the counterfeit products that it sold to Wayne State University. Cisco expressly reserves all of its legal rights with respect to this matter.

Very truly yours,

Louis P. Feuchtbaum

Enclosure

2835-75\1032660v5



**DLA Piper US LLP**
153 Townsend Street, Suite 800
San Francisco, California  94107-1957
www.dlapiper.com

Eugene M. Pak
eugene.pak@dlapiper.com
T  415.615.6024
F  415.659.7324

March 7, 2008

OUR FILE NO. 26573-12/Dexon Computer, Inc.

*Via Federal Express*

Dexon Computer, Inc.
9201 E. Bloomington Freeway, Suite BB
Minneapolis, MN  55420

Attn:  Steven O'Neil, CEO/President

**Re:     Cease and Desist Sale of Counterfeit Cisco Products**

Dear Mr. O'Neil:

We represent Cisco Systems, Inc. ("Cisco"). The distribution of counterfeit Cisco branded goods is unlawful and has been receiving widespread attention in the press, as shown by the articles available at:

- Information Week
  http://www.informationweek.com/security/showArticle.jhtml?articleID=206901053
- CNNMoney.com (Dow Jones Newswire)
  http://money.cnn.com/news/newsfeeds/articles/djf500/200802281624DOWJONESDJONLINE
  001151_FORTUNE5.htm
- SiliconValley.com (Bloomberg News)
  http://www.siliconvalley.com/ci_8403762?nclick_check=1

Cisco has been conducting its own investigations into trafficking in counterfeit Cisco products for purposes of potential enforcement in the civil courts.

Cisco has determined that Dexon Computer, Inc. has been distributing counterfeit Cisco hardware. Specifically, Cisco has obtained Cisco products that were sold by Dexon Computer, Inc., had them analyzed and has determined that these products were not manufactured by Cisco nor under its authority.

Cisco requires your immediate cooperation in bringing this infringing activity to a halt.  Cisco specifically demands that you immediately cease and desist marketing and distributing counterfeit and infringing goods.

The civil legal sanctions for violations of federal and state trademark, unfair competition, and deceptive business practices laws are severe.  In appropriate cases, a court may order a seizure of counterfeit and infringing goods, issue an injunction enjoining further wrongful and infringing activity, enter judgment for damages, order the disgorgement of any profits derived from the infringer's wrongful conduct, and charge penalties such as trebling the damage award and/or punitive damages.  In some cases, a court can award statutory trademark damages of up to $1,000,000 per trademark infringed and award attorneys' fees.  In many cases, these remedies are available whether or not the infringing party was aware of the counterfeit and infringing nature of the goods sold.



Steven O'Neil, CEO/President
Dexon Computer, Inc.
March 7, 2008
Page Two

This letter serves as legal notice that you must preserve all evidence regarding Dexon Computer, Inc.'s sales of purported Cisco products. In addition to your agreement to forever cease and desist in your infringing conduct, Cisco also requests that you voluntarily cooperate with Cisco's investigation by providing us with relevant information that would assist Cisco in tracing these counterfeit goods to their ultimate source and to others in your chain of distribution. Specifically, please provide the following information for the last two years:

- Identify any purported Cisco products that you have sold;

- Identify all customers to whom you have distributed any purported Cisco product; and

- Produce written or electronic documents reflecting all transactions in purported Cisco products, including correspondence, invoices, purchase orders or other similar commercial documents.

The information you provide should include any written or electronic documents reflecting the above transactions, including correspondence, invoices, purchase orders or other similar commercial documents.

If Dexon Computer, Inc. is interested making a binding commitment to cease selling counterfeit Cisco products and to fully cooperate with Cisco's investigation of counterfeit trafficking, please contact Joshua Koltun at 415-680-3410 or me at 415-615-6024. In the meantime, Cisco fully reserves its rights to pursue any and all civil remedies in this matter.
Sincerely,

**DLA Piper US LLP**

Eugene M. Pak

EMP:kk

cc:     Joshua Koltun, Esq.



Steven O'Neil, CEO/President
Dexon Computer, Inc.
March 7, 2008
Page Three

bcc:     Brett Millar (via e-mail)
         Neal Rubin, Esq. (via e-mail)
         Bill Friedman (via e-mail)
         Keith Medansky, Esq. (via e-mail)
         Richard Nelson, Esq. (via e-mail)
         Jeff Hallam, Esq. (via e-mail)

FedEx Ship Manager - Print Your Label(s)                                                    Page 1 of 1

From:  Origin ID: APCA  (415) 733-3907        Ship Date: 30AUG10
Susan Szewczyk                                                    ActWgt: 0.1 LB
SIDEMAN & BANCROFT                                               CAD: 5599488/INET 3060
1 EMBARCADERO CTR 8TH FL

SAN FRANCISCO, CA 94111                                          Delivery Address Bar Code

                                                                

SHIP TO:  (415) 733-3907        **BILL SENDER**                  Ref #    2835-75
**Daniel A. Rosenberg**                                          Invoice #
**Briggs and Morgan**                                            PO #
**2200 IDS Center**                                              Dept #
**80 South 8th Street**
**Minneapolis, MN 55402**                                                    TUE - 31 AUG   A1

                                                                TRK#
                                                                [0201]  7938 6808 7555    STANDARD OVERNIGHT


                                                                                           55402
                                                                                           MN-US
                                                                **XH MICA**                 MSP

                                                                

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.
Global Home | Small Business Center | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Security & Privacy | Site Map |
This site is protected by copyright and trademark laws under US and International law. All rights reserved.© 1995- 2010 FedEx