ERIN O. DUNGAN (Bar No. 227090)
BRIGGS and MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2157
Telephone: (612) 977-8400
Facsimile: (612) 977-8650
Email: edungan@briggs.com

Attorneys for Defendant
DEXON COMPUTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.,

Plaintiffs,

v.

DEXON COMPUTER, INC.,

Defendant.

Case No. 3:11-CV-01455-WHA

**DEFENDANT'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

JURY TRIAL DEMANDED

Defendant Dexon Computer, Inc. ("Dexon"), for its First Amended Answer to Plaintiffs Cisco Systems, Inc. and Cisco Technology Inc.'s Complaint, states as follows:

**JURISDICTION**

1. Dexon admits that the Complaint appears to be one for Trademark Counterfeiting, Trademark Infringement, Unfair Competition, and False Description arising under under §§ 32 and 43 fo the Lanham Act, 15 U.S.C. §§ 1114(1) (Trademark Counterfeiting and Trademark Infringement) and 1125(a) (Unfair Competition and False Description), California Common Law Unfair Competition and Trademark Infringement, Unfair Business Practices (Cal. Bus. & Prof. C.

§ 17200, et seq.) and Fraud (Cal. Civ. C. § 1710), but denies such claims have any legal or factual merit. Dexon denies the remaining allegations of paragraph 1 of the Complaint.

2. Dexon admits that the Court has subject matter jurisdiction over this action.

3. Dexon admits that the Court has subject matter jurisdiction over this action. Dexon further admits that it is and was at all relevant times mentioned in the Complaint a business entity incorporated in the State of Minnesota with its principal place of business in Minneapolis, Minnesota. Dexon does not have sufficient information to admit or deny the remaining allegations of paragraph 3 of the Complaint, and on that basis Dexon denies those allegations.

4. Dexon admits that this Court has personal jurisdiction over Dexon. Dexon further admits that it maintains a website accessible throughout the United States, including within the state of California. Dexon denies the remaining allegations of paragraph 4 of the Complaint.

5. Dexon admits that it has sold a product that shipped from a location within the State of California. Dexon denies the remaining allegations of paragraph 5 of the Complaint.

## VENUE

6. Dexon admits that venue for this action properly lies in the Northern District of California, but denies the remaining allegations of paragraph 6 of the Complaint.

## INTRA-DISTRICT ASSIGNMENT

7. Dexon admits the allegations of paragraph 7 of the Complaint.

## FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS

8. Dexon does not have sufficient information to admit or deny the allegations of paragraph 8 of the Complaint, and on that basis Dexon denies those allegations.

9. Dexon does not have sufficient information to admit or deny the allegations of paragraph 9 of the Complaint, and on that basis Dexon denies those allegations.

10. Dexon admits that CISCO is identified as the owner of record for certain United States Trademark Registrations, but Dexon does not have sufficient information to admit or deny the allegations of paragraph 10 of the Complaint, and on that basis Dexon denies those allegations.

11. Dexon does not have sufficient information to admit or deny the allegations of paragraph 11 of the Complaint, and on that basis Dexon denies those allegations.

12. Dexon does not have sufficient information to admit or deny the allegations of paragraph 12 of the Complaint, and on that basis Dexon denies those allegations.

13. Dexon does not have sufficient information to admit or deny the allegations of paragraph 13 of the Complaint, and on that basis Dexon denies those allegations.

14. Dexon does not have sufficient information to admit or deny the allegations of paragraph 14 of the Complaint, and on that basis Dexon denies those allegations.

15. Dexon does not have sufficient information to admit or deny the allegations of paragraph 15 of the Complaint, and on that basis Dexon denies those allegations.

**FACTUAL ALLEGATIONS RELATING TO DEFENDANT'S CONDUCT**

16. Dexon denies the allegations of paragraph 16 of the Complaint.

**Sale of Counterfeit CISCO Products on July 27, 2006**

17. Dexon denies the allegations of paragraph 17 of the Complaint.

18. Dexon denies the allegations of paragraph 18 of the Complaint.

**FBI's Seizure of Counterfeit CISCO Products from Dexon on February 26, 2008**

19. Dexon admits that on or about February 26, 2008 the Federal Bureau of Investigation ("FBI") executed a search warrant at Dexon's business location in Minneapolis, Minnesota and during the course of the investigation the FBI seized certain products. Dexon denies the remaining allegations of paragraph 19 of the Complaint.

20. Dexon denies the allegations of paragraph 20 of the Complaint.

**March 7, 2008 Cease and Desist Letter to O'NEILL and DEXON**

21. Dexon admits that on or about March 7, 2008 CISCO sent a letter to Steven O'Neill ("O'NEILL"), the then and current president and CEO of Dexon, a copy of which is attached to the Complaint as Attachment 1. The contents of that letter speak for themselves. Dexon denies the remaining alletgations of paragraph 21 of the Complaint.

22. Dexon admits that on or about March 18, 2008, Dexon's counsel sent a letter to CISCO denying the allegations in CISCO's March 7, 2008 letter. Dexon further admits that a copy of the March 18, 2008 letter is attached to the Complaint as Attachment 2. The contents of that letter speak for themselves. Dexon denies the remaining allegations of paragraph 22 of the Complaint.

**Sale of Counterfeit CISCO Products to the City of Portland, Oregon In June 2008**

23. Dexon admits that at some time on or about June 2008, Dexon attempted to sell a certain number of CISCO branded products to the City of Portland, Oregon. Dexon denies the remaining allegations of paragraph 23 of the Complaint.

24. Dexon denies the allegations of paragraph 24 of the Complaint.

25. Dexon denies the allegations of paragraph 25 of the Complaint.

**Sale of Counterfeit CISCO Products to Wayne State University in June 2010**

26. Dexon admits the allegations of paragraph 26 of the Complaint.

27. Dexon denies the allegations of paragraph 27 of the Complaint.

**Sale of Counterfeit CISCO Products During July 2010**

28. Dexon admits that on or about July 14, 2010 it sold seven products and shipped them on or about July 21, 2010 to an address in Los Angeles, CA. Dexon denies the remaining allegations of paragraph 28 of the Complaint.

29. Dexon denies the allegations of paragraph 29 of the Complaint.

**August 6, 2010 Cease and Desist Letter to O'NEILL and DEXON**

30. Dexon admits that on or about August 6, 2010, CISCO sent a letter to O'NEILL, a copy of which is attached to the Complaint as Attachment 3 and speaks for itself. Dexon denies the remaining allegations of paragraph 30 of the Complaint.

31. Dexon admits that it responded to CISCO's August 6, 2010 letter with a letter dated August 23, 2010. Dexon further admits that a copy of the August 23, 2010 letter is attached to the Complaint as Attachment 4 and that the letter speaks for itself. Dexon denies the remaining allegations of paragraph 31 of the Complaint.

32. Dexon admits that CISCO responded to Dexon's August 23, 2010 letter with a letter dated August 30, 2010. Dexon further admits that a copy of the August 30, 2010 letter is attached as Attachment 5 and that the letter speaks for itself. Dexon denies the remaining allegations of paragraph 32 of the Complaint.

33. Dexon denies the allegations of paragraph 33 of the Complaint.

**FIRST CAUSE OF ACTION**
**(Federal Trademark Infringement *15 U.S.C. § 1114*)**

34. Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-33 in response to the allegations in paragraph 34 of the Complaint.

35. Dexon denies the allegations of paragraph 35 of the Complaint.

36. Dexon denies the allegations of paragraph 36 of the Complaint.

37. Dexon denies the allegations of paragraph 37 of the Complaint.

38. Dexon denies the allegations of paragraph 38 of the Complaint.

39. Dexon denies the allegations of paragraph 39 of the Complaint.

**SECOND CAUSE OF ACTION**
**(Counterfeit of Registered Trademark *15 U.S.C. § 1114(1)*)**

40. Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-39 in response to the allegations in paragraph 40 of the Complaint.

41. Dexon denies the allegations of paragraph 41 of the Complaint.

42. Dexon denies the allegations of paragraph 42 of the Complaint.

43. Dexon denies the allegations of paragraph 43 of the Complaint.

44. Dexon denies the allegations of paragraph 44 of the Complaint.

45. Dexon denies the allegations of paragraph 45 of the Complaint.

46. Dexon denies the allegations of paragraph 46 of the Complaint.

**THIRD CAUSE OF ACTION**
**(Unfair Competition 15 U.S.C. § 1125(a)(1)(A))**

47. Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-46 in response to the allegations in paragraph 47 of the Complaint.

48. Dexon denies the allegations of paragraph 48 of the Complaint

49. Dexon denies the allegations of paragraph 49 of the Complaint.

50. Dexon denies the allegations of paragraph 50 of the Complaint.

51. Dexon denies the allegations of paragraph 51 of the Complaint.

52. Dexon denies the allegations of paragraph 52 of the Complaint.

**FOURTH CAUSE OF ACTION**
**(California Common Law Unfair Competition and Trademark Infringement)**

53. Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-52 in response to the allegations in paragraph 53 of the Complaint.

54. Dexon denies the allegations of paragraph 54 of the Complaint.

55. Dexon denies the allegations of paragraph 55 of the Complaint.

56. Dexon denies the allegations of paragraph 56 of the Complaint.

57. Dexon denies the allegations of paragraph 57 of the Complaint.

58. Dexon denies the allegations of paragraph 58 of the Complaint.

59. Dexon denies the allegations of paragraph 59 of the Complaint.

**FIFTH CAUSE OF ACTION**
**(Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 et seq.)**

60. Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-59 in response to the allegations in paragraph 60 of the Complaint.

61. Dexon admits the allegations of paragraph 61 of the Complaint.

62. Dexon denies the allegations of paragraph 62 of the Complaint.

63. Dexon denies the allegations of paragraph 63 of the Complaint.

64. Dexon denies the allegations of paragraph 64 of the Complaint.

65. Dexon denies the allegations of paragraph 65 of the Complaint.

66. Dexon denies the allegations of paragraph 66 of the Complaint.

67. Dexon admits that Plaintiffs purport to seek "full restitution by Defendant according to proof to restore any and all property and monies, including interest, acquired by Defendants, and all costs caused to Plaintiffs as a result of Defendant's unfair business practices." Dexon denies that Plaintiffs are entitled to any such relief.

68. Dexon denies the allegations of paragraph 68 of the Complaint.

69. Dexon denies the allegations of paragraph 70 of the Complaint.

**SIXTH CAUSE OF ACTION**
**(Fraud, Cal. Civ. Code § 1710)**

70. Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-69 in response to the allegations in paragraph 70 of the Complaint.

71. Dexon denies the allegations of paragraph 71 of the Complaint.

72. Dexon denies the allegations of paragraph 72 of the Complaint.

73. Dexon denies the allegations of paragraph 73 of the Complaint.

74. Dexon denies the allegations of paragraph 74 of the Complaint.

75. Dexon denies the allegations of paragraph 75 of the Complaint.

## AFFIRMATIVE DEFENSES

On information and belief, Dexon asserts the following affirmative defenses:

1. Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

2. The Northern District of California is a forum non conveniens for this action. Venue is appropriate in the United States District Court for the District of Minnesota.

3. Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel.

4. Plaintiffs' claims are barred in whole or in part under the doctrine of laches or waiver.

5. Plaintiffs' claims are barred in whole or in part under the doctrine of unclean hands.

6. Plaintiffs' claims are barred in whole or in part by applicable statutes of limitation.

7. Dexon's acts complained of herein are privileged and protected by the first-sale doctrine.

8. There is no likelihood of confusion, deception, or mistake on the part of the consuming public relating to or arising out of Dexon's acts complained of herein.

9. Plaintiffs have failed to exercise control over their alleged marks.

10. Dexon has not knowingly or voluntarily waived any applicable affirmative defense, and reserves the right to assert and rely upon such other applicable affirmative defenses as may become available or apparent during discovery and investigation.

## COUNTERCLAIMS

Counterclaim Plaintiff Dexon Computer, Inc. asserts the following counterclaims against Counterclaim Defendant Cisco Sytems, Inc., and alleges as follows:

## THE PARTIES

11. Defendant and Counterclaim Plaintiff Dexon Computer, Inc. ("Dexon") is a Minnesota corporation with its principal place of business at 9201 E. Bloomington Freeway, Suite BB, Bloomington, Minnesota 55420.

12. On information and belief, Plaintiff and Counterclaim Defendant Cisco Systems, Inc. ("Cisco") is a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

**JURISDICTION**

13. This Court has subject matter jurisdiction over Dexon's counterclaims pursuant to 28 U.S.C. §§ 1367 and 1332. Dexon's counterclaims arise out of the same controversy as Cisco's Federal claims, there is complete diversity of citizenship between Cisco and Dexon, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

**FACTS**

**Cisco Systems**

14. Cisco is a worldwide leader of networking for the Internet. Cisco offers products and related services in the core technologies of routing and switching, along with more advanced technologies in areas such as home networking, IP telephony, optical networking, security, storage area networking, and wireless technology. On information and belief, Cisco contracts for the manufacture of a majority of its products overseas to keep costs of manufacture at a minimum.

15. On information and belief, Cisco has a stranglehold on the supply of networking products in the United States, with a dominant market share that at times has reached 70% or more.

16. On information and belief, Cisco's net sales for fiscal year 2010 alone were over $40 billion, with profit margins exceeding industry norms.

**The Open Market**

17. As with any economic activity where there are significant profits, market forces have operated to create secondary markets for Cisco products. On information and belief, authentic or

genuine Cisco products come to the open market in the United States in a variety of ways including: (a) Cisco's knowing sale of such products to open market suppliers in the context of either specific end user deals or when Cisco needs to move inventory; (b) Cisco's authorized resellers' purchase of product in excess of what they need for a specific end user order and subsequent resale of such product into the open market; (c) Cisco end user's resale of new, unused product; and (d) through importation of such product from abroad where it has been sold by distributors, resellers, or end users under similar circumstances. On information and belief, Cisco resists attempts by end users and resellers to return product, resulting in a natural supply of open market Cisco product.

18. Given the substantial profits available from sale of Cisco-branded product, market forces dictate that a secondary market will develop for such products. These market forces benefit end users in that they reduce prices for such products.

19. Dexon is an independent open-market reseller of computer networking products, including routers, switches and other computer hardware. Dexon provides new, refurbished and discontinued hardware products, including authentic or genuine Cisco products, to its customers.

20. Dexon obtains Cisco products from reliable suppliers, subjects such products to extensive quality control, and then resells such products to other resellers and to end users, at a profit but frequently at prices lower than that offered by Cisco "authorized resellers."

21. On information and belief, Cisco regards open market resellers like Dexon as a threat to its excess profits. As a result, Cisco spends substantial money and effort to attack open market participants such as Dexon and to chill reseller and end user participation in the open market. These steps include but are not limited to:

a. Prompting federal investigation of the open market on specious grounds that the open market presents a threat to the national security of the United States.

b. Employing a team of "Brand Protection" employees whose primary responsibility is to intervene with resellers and end users in cases where they are either contemplating the purchase of product, or have ordered product, from the open market. Brand Protection personnel use a variety of tools to disrupt open market sales, including: (i) advising resellers and end users that product from the open market is suspect, may damage or jeopardize their network operations, may void Cisco warranties, may be counterfeit, and is otherwise unreliable; and (ii) spreading false rumors about open market resellers and their owners.

c. Instructing its account managers, assigned to specific end users: (i) to convince end users to specify in RFPs the acquisition of Cisco equipment through "authorized" resellers only (even if the result is materially higher pricing); (ii) to advise resellers and end users of the same issues raised by Brand Protection and, if necessary, invite Brand Protection into the discussion.

d. Tortiously and erroneously insinuating to resellers and end users that open market participants in general are engaging in illegal activity when this is not the case.

**Cisco's Tortious Efforts to Interfere with Dexon's Business: Lost Customers**

22. In May 2006, Jacobs Engineering ("Jacobs") submitted an order for $284,000.00 worth of new and used Cisco product from Dexon. On information and belief, a Cisco technical employee approved select equipment as new and therefore eligible for support and licensing, but a Cisco sales representative subsequently denied eligibility for support and licensing. As a result, Jacobs cancelled its $284,000.00 contract and Dexon lost all future business with Jacobs.

23. In May 2007, American Eagle Outfitters ("AEO"), with whom Dexon had previously done a substantial amount of business, received an email from its Cisco account representative claiming that equipment AEO had recently purchased from Dexon was "Gray Market equipment." The email went on to state: "Dexon is not authorized to resell or distribute Cisco equipment. In fact, even the switches they sourced for you was [*sic*] done through a third party with a different end user listed. This is highly unusual, possibly illegal, behavior . . . My advice is for you to cancel the remainder of the order with Dexon and place through an authorized reseller like Presidio, Sprint, or IBM." As a result, AEO discontinued its customer relationship with Dexon entirely.

24. In September 2008, Dexon was awarded a contract to supply Cisco switches to Omaha Public Power District ("Omaha Power"), and shortly thereafter received a purchase order totallying approximately $75,000.00. On information and belief, Cisco learned of Dexon receiving the Omaha Power award and cautioned Omaha Power not to purchase from Dexon. As a result, Omaha Power cancelled its purchase order and has not since submitted any orders to Dexon.

25. In early 2010, Dexon customer The Valspar Corporation ("Valspar") was contacted by its Cisco representative, who had discovered that Valspar was purchasing a substantial amount of equipment from Dexon. On information and belief, the Cisco representative told Valspar that a lot of the equipment Dexon sold Valspar came from Europe and that it was illegal for Valspar to be using the equipment. Valspar informed Dexon that it would be contacting its attorneys regarding the information it had received from its Cisco representative, and that it would get back to Dexon. Dexon never heard back from Valspar and has since not received any orders from Valspar.

26. In March 2010, Wayne State University ("Wayne State") entered into a contract with Dexon for the purchase of $600,000.00 worth of brand new product. On information and belief, Cisco learned of Dexon's Wayne State deal and informed Wayne State that licenses would not be valid for these products because the products were not new. As a result, Dexon lost the Wayne State contract and all other business from Wayne State.

27. The customers discussed above are merely a sampling of the customers that Dexon has lost as a result of known tortious conduct by Cisco. The actual and total number of customers lost as a result of Cisco's tortious conduct, including Cisco conduct/actions Dexon is presently unaware of, is unknown.

**Cisco's Tortious Efforts to Interfere with Dexon's Business: Product Returns and Other Lost Business Opportunities**

28. In April 2007, Dexon customer Washburn University ("Washburn U") received an email from its Cisco Account manager regarding "the implications of buying Cisco equipment through a non Cisco Certified Partner." The Cisco email stated that Dexon was "NOT a Cisco Certified Partner" and, accordingly, Washburn U was "at high risk of getting either aged product, used product, or counterfeit product by purchasing this equipment through Dexon." The magnitude of Washburn's orders with Dexon have subsequently decreased.

29. In November 2008, Dexon customer Development Dimensions International ("DDI") contacted Dexon to return certain Cisco products it had purchased from Dexon that summer because a Cisco representative had informed DDI that the products were "illegally obtained."

30. In early 2009, Pedernales Electric Cooperative, Inc. ("Pedernales") submitted two purchase orders to Dexon for the purchase of certain networking equipment. Dexon responded to the purchase order by supplying new, geuine, authentic Cisco equipment to Pedernales. On information and belief, one or more Cisco representatives learned of the Pedernales purchase orders with Dexon. The Cisco representative(s) informed Pedernales that, among other things,

the equipment provided by Dexon was "not new" equipment and that it was not qualified for maintenance under Cisco's licensing agreements. As a result, Pendernales cancelled its two purchase orders with Dexon and asked to return the equipment provided under those purchase orders.

31. In early 2011, Dexon supplied four new, genuine, authentic Cisco 3750X switches to K&N Engineering, Inc. ("K&N"). On information and belief, K&N's Cisco account manager learned of K&N's purchase from Dexon. The Cisco account manager led K&N to believe that the switches provided by Dexon were "used" rather than new. As a result, K&N asked to return the products.

32. In early 2011, Dexon submitted a bid for the supply of certain networking equipment to Burns & McDonnel ("Burns"). On information and belief, Burns' Cisco representative learned of Dexon's bid to Burns. The Cisco representative informed Burns that since Dexon was not an authorized reseller, it "almost certainly" could not be selling new, legitimate Cisco gear. As a result, Burns informed Dexon that it would be proceeding with another vendor for the supply of the needed equipment.

33. In May 2011, Miami University ("Miami U"), a customer of Dexon for over nine years, placed an order for Cisco switches from Dexon. On information and belief, Cisco representatives learned of Miami U's order and asked Miami U to provide the source of its order because Cisco feared the switches were stolen and/or illegitimate.

34. On information and belief, Cisco representatives and account managers have informed other Dexon customers that "almost all Cisco reseller product is uncertified" and therefore "illegal." As a result, Dexon's customers have questioned the authenticity and legality of products sold by Dexon.

35. For example, in November 2007, Dexon submitted a bid to Castle Family Health Centers ("Castle") for the supply of certain Cisco equipment. Cisco learned of Dexon's bid and sent a letter to Castle on November 20, 2007. Cisco's letter cited a "flood of non-genuine (counterfeit) SFPs, WICs, GBICs among other items, onto the Secondary Market" and the resulting "buyer beware" scenario, and further that Dexon was not a Cisco Authorized Reseller. Cisco's letter falsely insinuated that Dexon was selling counterfeit goods to Castle.

36. As another example, in November 2010, Dexon customer Fourth Floor Consulting ("Fourth Floor") informed Dexon that its Cisco sales representative had informed Fourth Floor that "Dexon sells counterfeit equipment."

37. Cisco's "Brand Protection" team has also presented, published, and/or caused to be published the false and misleading message that "genuine Cisco gear only comes from Cisco and its partners."

**Pattern and Practice**

38. For the past several years, Cisco has engaged in the type of conduct described above with the intent to disrupt contracts between Dexon and its customers, pending opportunities with such customers, future business with such customers, and even with the apparent goal of driving Dexon out of business altogether.

39. As a direct result of Cisco's tortious interference, Dexon has suffered cancellation of numerous pending orders, loss of opportunity to bid on projects, and the loss of entire relationships with many of its top customers.

**COUNT I**
**Intentional Interference with Contractual Relations**
**Against Cisco Systems, Inc.**

40. Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

41. Dexon secured contracts with certain customers for the sale of Cisco products on which Dexon would have earned significant profits.

42. On information and belief, Cisco knew or should have known of these contractual relationships between Dexon and these third party customers.

43. On information and belief, Cisco intentionally, or with reckless disregard for the truth, made false and misleading statements about Dexon and the products it sells to these customers in order to disrupt the contractual relationship and to cause these customers to purchase product from Cisco authorized resellers at a higher price.

44. Cisco's statements in fact disrupted these contractual relationships between Dexon and its customers.

45. Dexon has suffered substantial economic damage as a result of this wrongful conduct in an amount subject to proof at trial.

46. Cisco's conduct, as outlined above, demonstrates that Cisco acted fraudulently, oppressively, and with malice within the meaning of Cal. Civ. Code § 3294, entitling Dexon to punitive or exemplary damages in an amount sufficient to punish Cisco and to make an example of it to the community such that Cisco will not engage in such conduct in the future.

**COUNT II**
**Intentional Interference with Prospective Economic Advantage**
**Against Cisco Sytems, Inc.**

47. Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

48. An economic relationship existed between Dexon and its actual and prospective customers, each of which contained the probability of substantial future economic benefits to Dexon.

49. On information and belief, Cisco knew or should have known of these relationships.

50. On information and belief, Cisco intentionally, or with reckless disregard, engaged in tortious conduct designed to disrupt Dexon's potential benefit from these relationships, including:

a. By intentionally misrepresenting, or representing with reckless disregard for the truth, to Dexon's customers, among other things, that the Cisco products Dexon sold were not new, used, counterfeit, suspect, non-genuine, and/or unauthorized; and

b. By intentionally misrepresenting, or representing with reckless disregard for the truth, to Dexon's customers, among other things, that if they purchased product from open market resellers such as Dexon, they would jeopardize the security of their data networks.

51. Cisco's statements were made with the intent to disrupt the economic relationship between Dexon and its potential and actual customers in order to put Dexon out of business and to ensure that these customers would purchase Cisco product at higher prices from "Cisco Authorized Resellers" under Cisco's control.

52. As a result of the efforts detailed above, Dexon's relationships with its potential and actual customers have in fact been permanently disrupted and/or materially damaged in a significant number of instances, including its future relationship with Jacobs and AEO, for example. As a result of CISCO's tortious efforts, Dexon's customers have refused to pay for certain Cisco goods, have returned and/or cancelled orders for such goods, have removed Dexon's bids from contention for business, and have ceased doing business with Dexon on other products and/or alltogether.

53. Dexon has suffered substantial economic damage as a result of this wrongful conduct in an amount subject to proof at trial.

54. Cisco's conduct, as outlined above, demonstrates that Cisco acted fraudulently, oppressively, and with malice within the meaning of Cal. Civ. Code § 3294, entitling Dexon to

punitive or exemplary damages in an amount sufficient to punish Cisco and to make an example of it to the community such that Cisco will not engage in such conduct in the future.

**COUNT III**
**Trade Libel**
**Against Cisco Systems, Inc.**

55. Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

56. On information and belief, Dexon alleges that Cisco has repeatedly made disparaging statements about Dexon's products as detailed herein.

57. Cisco's statements disparaged Dexon's products. On information and belief, Dexon alleges that the claims made were false or materially misleading.

58. Dexon has suffered and will continue to suffer irreparable harm should Cisco's trade libel be allowed to continue.

59. As a proximate result of Cisco's statements, prospective and actual customers have been deterred from buying Dexon's products and from otherwise dealing with Dexon. Dexon has suffered substantial economic damage as a result of this wrongful conduct in an amount subject to proof at trial.

60. Cisco's conduct, as outlined above, demonstrates that Cisco acted fraudulently, oppressively, and with malice within the meaning of Cal. Civ. Code § 3294, entitling Dexon to punitive or exemplary damages in an amount sufficient to punish Cisco and to make an example of it to the community such that Cisco will not engage in such conduct in the future.

61. Dexon will suffer irreparable harm to its goodwill if this trade libel continues. Dexon is entitled to injunctive relief to preclude Cisco's trade libel.

**COUNT IV**
**Unfair Competition Under Cal. Bus. & Prof. Code § 17200 *et seq.***

62. Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

63. Cisco's conduct, as set forth above, is unlawful, unfair, and fraudulent as well as untrue and deceptive within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq*.

64. Dexon will continue to suffer irreparable harm to its goodwill if this unfair competition continues. Dexon is entitled to injunctive relief to preclude Cisco's unfair competition.

**PRAYER FOR RELIEF**

65. Wherefore, Defendant and Counterclaim Plaintiff Dexon Computer, Inc. denies that Plaintiffs and Counterclaim Defendants Cisco Sytems, Inc. and Cisco Technology, Inc. are entitled to any of the relief requested in paragraphs 1-13 of their Prayer for Relief and prays for judgment in its favor and against Plaintiffs and Counterclaim Defendants Cisco Sytems, Inc. and Cisco Technology, Inc. as follows:

a. Dismissing Plaintiffs' claims with prejudice, together with costs and disbursements;

b. Awarding Dexon its attorneys fees incurred in defending against such claims;

c. An award of actual damages from Cisco Systems, Inc., subject to proof at trial but in an amount in excess of $75,000.;

d. An award of punitive damages in an amount sufficient to punish Cisco Systems, Inc., to make an example of it to the community, and to deter it from such conduct as to Dexon or others in the future;

e. For equitable remedial efforts by Cisco Systems, Inc. sufficient to rehabilitate Dexon's damaged reputation;

f. For orders restraining Cisco Systems, Inc. from engaging in similar conduct in the future;

g. For Dexon's costs and fees incurred herein, including but not limited to attorneys' fees and costs; and

h. Such further relief as this Court deems just and proper under the circumstances of this action.

**DEMAND FOR JURY TRIAL**

Dexon demands a trial by jury on all issues so triable.

Dated: June 9, 2011

BRIGGS AND MORGAN, P.A.

By: s/Erin O. Dungan
Erin O. Dungan

Attorneys for Defendant
Dexon Computer, Inc.

3977023v8